Young v. Thompson.

---

## ALEXANDER YOUNG v. CHARLES L. THOMPSON.

### *Error from Douglas County.*

Suit below brought by Thompson, defendant in error, to foreclose a mortgage given by Clemo to Fant, and assigned to Thompson. Young plaintiff in error, made defendant below, answered setting up a subsequent mortgage made for a valuable consideration in good faith by Clemo, on the same land, alleging a foreclosure thereof, and commissioners sale and deed of the land to himself without notice of the prior conveyance; that the mortgage by Clemo to Fant was in the form of an absolute deed and a defeasance bond executed by Fant to Clemo to the effect that, on the payment by Clemo to Fant or his assignee, of the money secured by the mortgage, that Fant or assignees should reconvey; that the deed was recorded, the bond of defeasance not.

A decision by the Court below sustaining a demurrer to the answer as insufficient to postpone the plaintiff's right in the mortgaged premises, but allowing the answer to stand as a statement of the interest of Young in the premises as subsequent mortgagee, *held* to be the application of the true principles of the law of the case, though somewhat irregular.

The recording of the deed absolute from C. to F. made at the same time with a bond of defeasance from F. to C. where the bond is not recorded, *held* constructive notice that C. had parted with his title to the land. *Semble*, that the recording of the defeasance bond would protect only the rights of C.

The case,—Clemens v. Elder, 9 Iowa R., 272, cited approvingly.

The decision in Dudley v. Reynolds, 1 Kans. State R., 285, on the assessment of the amount due for interest, sustained and applied to the point in this case, involving the question therein decided.

This was an action in the usual form on a note, as follows:

"LECOMPTON, K. T., March 9th, 1858.

Twelve months after date I promise to pay H. G. Fant or order, for value received, two hundred and fifty dollars, and if not paid at maturity, then to draw interest at the rate of ten per cent. per month until paid.

(Signed)                     T. H. CLEMO."

And a mortgage given by Clemo to secure said note.

A money judgment was asked and an order for the sale of the mortgaged premises and a decree of foreclosure against the defendants, including Young, plaintiff in error.

Young filed answer setting up a note and mortgage executed by Clemo subsequent in date to the note and mortgage upon which the action was founded, the said mortgage being on the same premises. That the mortgage to Young was duly recorded and by him foreclosed, and on sale, the land was by him bid in, and a deed of the commissioner duly executed and recorded. The answer of Young, in setting out the note alleged, that "the said defendant Clemo, *being indebted* to the said defendant Young, made his certain promissory note in writing," &c. It was further alleged in the answer, that the note and mortgage executed by Clemo to Young "were executed for a valuable consideration and in good faith, without notice of any pre-existing or prior lien or incumbrance."

Young further alleged that the mortgage sued upon, executed by Clemo to Fant, was in the form of an absolute deed in fee simple; that at the time of the execution of said deed the said Fant executed and delivered to Clemo a bond to reconvey the said premises if the said sum of money should be paid according to the terms of said note. That said absolute deed was recorded, but that the bond given by the said Fant to reconvey was not recorded.

Thompson demurred to this answer on the ground that it did not contain facts sufficient to constitute a defense to

the cause of action set out in the petition. Demurrer sustained below. Young excepted and appealed.

The judgment upon the demurrer was not absolute, but was framed in such manner as to show that the plaintiff in error still retained an interest in the mortgaged premises; that is to say that portion of the answer which set up want of notice and good faith on the part of plaintiff, and the claim of priority of lien over the deed of Thompson was decided to be insufficient in law as a defense to the cause of action set forth in the petition, but that portion of the answer which shown the interest of Young in the premises, was allowed to stand.

Young appeared upon the assessment by the Court below of the damages on the note and mortgage, and claimed that the Court could give judgment for the said Thompson against him for no sum exceeding the original amount of the note, $250, and interest after its maturity at ten per cent. per annum. The Court decided that the note drew interest according to its terms, i. e., ten per cent. per month after maturity, and assessed the damages accordingly at $956, and ordered the mortgaged premises to be sold to pay first the note and mortgage of Thompson, to which ruling defendant excepted. Thompson objected to Young's appearing, and excepted to the ruling of the Court allowing such appearance.

The errors assigned, are 1st. That the Court below erred in sustaining the plaintiff's demurrer to defendants answer in the Court below. 2d. That the Court erred in the assessment of the amount due from Clemo to Thompson.

The case was argued by *E. V. Banks* for plaintiff in error, and by *Louis Carpenter* for defendant in error.

*Lowman & Banks* for plaintiff in error.

1st. The deed executed by Clemo to Fant, and the bond from Fant to Clemo, taken together, constitute a

mortgage.   It is a case where the deed and defeasance are separate instruments.  (4 *Kent's Com.* 144; *Diamond* v. *Enoch, Add.* 357; *Wharf* v. *Howell*, 5 *Dinn.* 499; *Colwell* v. *Woods*, 3 *Wharton*, 183; 1 *Hillard on Real Estate*, 393; 22 *Pick.*, 526; *Parson* v. *Mumford*, 3 *Barb., Ch.* 152; *Moore* v. *Madden*, 2 *Eng.*, 530; 15 *Pick.*, 259; *Hoggins* v. *Arnold*; 1 *Hillard Mortgages*, 29; *Crary* v. *Rawson*, 8 *Mass.*, 159; 17 *S. & R.*, 70; 7 *Watts*, 261; *Powel on Mort.*, 6 *and* 7.)

The following are the authorities on the point collected in Abbot's N. Y. Digest:

1 *John. Cases*, 91; 15 *John.*, 463; 3 *Wend.* 14, 234; 1 *Paige*, 455, 3 *id.* 254, and see 2 *Cow.* 195, 218; 2 *Den.*, 130; 1 *Hill*, 601.  Reversed on the ground that the evidence offered did not go to contradict the contract.  2 *Den.*, 306; 21 *Wend.*, 640; 5 *N. Y.* (1 *Seld.*) 456.  Also see 1 *Burr, R.*, 106; *Cow. & Hill's Notes to Phil. Ev., p.* 1421; *Note* 958, citing 3 *Fairfield's R.*, 346, 349; 2 *Bebbs R.*, 610.

2nd.   The absolute deed having been put upon record without the defeasance, it was an incomplete registry, and was no notice of a mortgage to a subsequent purchaser or incumbrancer.   4 *Kent.*, 144; *N. Y. R. S., Sec.* 1, *Ch.* 3, *p.* 40; *Die* v. *Dunham*, 2 *John., Ch. R.*, 182, 432; *James* v. *Johnson*, 6 *John. Ch.*, 432; *Grunston* v. *Carter*, 3 *Paige*, 421; *Mass. R. S.* 407, *Ch.*, 59, *Sec.* 27, *Hamson* v. *Phelp's Academy*, 12 *Mass.*, 456; *Laws Penn., Vol.* 7, 1820, *page* 303; *Friedly* v. *Hamelton*, 17 *Serg. & Rawle*, 70; *Jaques* v. *Weeks*, 7 *Watts*, 261; *Manuf's &c.* v. *Bank &c.*, 7 *W. & S.*, 335, *N. H. R. S.* 245; *Tifft* v. *Walker*, 10 *N. H.*, 150; *Wright* v. *Bates*, 13 *Vt. R.*, 451.   See also *Ill. Rev. L.*, 131 *and cases;* 1 *N. J. L.*, 464, *N. J. Rev. Stat.* 658 *and cases.*

The decisions above referred to, are made upon the statutes of the different States, respectively.

3rd.   By the recording acts in force at the time of the transaction every instrument in writing affecting real es-

tate, either in law or equity, was required to be put upon record to charge third parties with notice. *Laws* '58, *page* 181, *Sec.* 40, 42; *Laws* '58, *p.* 342, *Chap.* 60.

4th. The bond from Fant to Clemo is clearly an instrument affecting real estate. It is an instrument which changes the character of the transaction from an absolute conveyance to a conveyance by way of mortgage. (1 *Hilliard on Mort.*, 28, 35, and cases before cited.) It should have been *recorded.*

5th. Plaintiff Young had no notice of this part of the conveyance either actual or constructive. He therefore had no notice of a mortgage. (*Kent's Com.*, 4, *Vol.*, *page* 144; *Fridley* v. *Hamilton*, 17 *Serg. & Rawle*, 70; *Jaques* v. *Weeks*, 7 *Watts*, 261; *Stat. of* 1855, *p.* 181, *Sec.* 40, 42; 1 *Bouv. Inst.*, 348; 2 *id.* 281; *Brown* v. *Dean*, 3 *Wend.*, 208; *Dey* v. *Dunham*, 2 *John. Ch. R.*, 182; 6 *id.*, 432.

As to notice, see Missouri cases in 5 Mo., 507; 6 id., 605, 4 id. 62, 8 id. 19 and 303; 8 Mo., 479.

6th. The question, "what effect has the recording of the deed absolute on the case," remains. This action is to foreclose a mortgage, not to recover under a deed. Notice of this deed absolute, is not according to the weight of authority, notice of a mortgage. The reason *notice* has the effect to postpone the rights of those receiving it, is because it tends to put them on inquiry. "That notice is sufficient which puts the party upon inquiry," whether it be actual or constructive. But "the *presumption* of notice which arises from proof of that degree of knowledge which will put a party upon inquiry, is not a presumption of law but of fact, and may therefore be controverted by evidence." *Williamson* v. *Brown*, 15 *N. Y.*, 354, *Selden & Paige, J's.*

Although a record may put one on inquiry, it does not follow that the true nature of the transaction is discovered. *Selden, J.* asks, "If he performs that duty (of inquiry,) is he still bound without *actual* notice?"

This case was decided on *demurrer.* The question determined was one of fact—of notice. The answer averred no notice of the mortgage. The presumption of notice raised by the recording of the deed absolute, is one of fact liable to be rebutted by evidence on the trial and should have been left to the jury.

7th. The record of the absolute deed was calculated to allay inquiry as to a mortgage, and to mislead. 17 *Searg & Rawle,* 70; 7 *Watts,* 261.

8th. The statute provides what a record is notice of; *i. e.,* "of the contents thereof." See *Stat.* 1858, *p.* 342, *Sec.* 7; also *Stat.* 1855, *p.* 181, *Sec.* 40, 41; *Sugden on Vendors,* 984.

This suit was brought to foreclose a mortgage. Young need plead only a defense to an action on a mortgage. However many ways Thompson *might* have succeeded in recovering the mortgaged premises, yet to succeed, he must plead and prove a case. Had an action been brought to recover the land under a deed absolute from Clemo, Young might have had a defense to it, not applicable to this case. If the answer sets out a defense to an action on a mortgage, it is sufficient.

9th. The policy of the law in not favoring subsequent purchasers and incumbrancers *with* notice of prior conveyances, is because of the bad faith on the part of the parties to such subsequent transaction. The recording of the deed absolute without the defeasance bond is evidence of bad faith as much as the receiving of a mortgage, with knowledge of the existence of a deed of the same premises. The maxim, "He who asks equity must do equity," applies to Thompson in this case.

10th. Those facts which show bad faith or fraud on the part of a subsequent encumbrance, are the *very ones* that establish a sufficient notice. (15 *N. Y.,* 354; 17 *Searg & Rawle,* 70.) There being no facts sufficient to *establish* notice of a prior mortgage, no bad faith can be inferred

as to Young. 2 *Sugden on Vendors, Ch.* 23, *Sec.* 1, *1st Siebd.*; *Hill on Trustees, p.* 510, *(Marg.)*

The rule that there is no difference between actual and constructive notice in its consequences remains undisturbed by this view.

The plaintiff in error, then, was an incumbrancer of the property in question, subsequent in point of date, without notice of any lien or incumbrance existing, so far as this suit is concerned.

II. Defendant insists that the mortgage of Young was not obtained *bona fide,* that it appears from the answer that it was given for an antecedent debt.

1st. The answer alleges that "Clemo being indebted to Young made his promissory note," &c.

Recognizing the distinction between taking a note in full satisfaction of an antecedent debt, and taking one as collateral security or on a general assignment for the benefit of creditors, (See *Bassell* v. *Nosworthy,* 2 *Vol. Lead, Cases in Eq., part 1st, pp.* 101 *to* 113,) and cases cited, yet the answer is sufficient.

The indebtedness of Clemo may have been secured by notes and mortgages or liens of judgments, which were canceled at the time. In such case the consideration would be valuable within the meaning of the recording acts. *Jackson* v. *Winslow,* 9 *Cow.,* 3; 2 *Lead. Cases in Eq.,* 111, 112.

2d. Defendant below averred all that was ever required by the strictest rules of pleading. He alleged that he was a *bona fide* incumbrancer without notice. This is held to be sufficiently full, and throws the burden on the opposite party. 2 *Lead. Cases in Eq.,* 119, citing *Flagg* v. *Man,* 2 *Sumner,* 186; *Hugleson* v. *Mandeville,* 4 *Dressaussure,* 87; *Maywood* v. *Lubcock,* 1 *Benley's Eq.,* 382; *Conner* v. *Tuck,* 1 *Al.,* 794; see also *Sugden on Vendors,* 484.

12

. 3rd. But in these States where these rigid rules of pleading exist, there are statutory provisions making them necessary. *Ch. 3d part* 2, *Sec.* 1, *N. Y. R. S.*

The Kansas Statute provides that no instrument in writing conveying real estate or whereby it may be effected, shall be valid except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited," &c. (*Laws* 1855, *p.* 182, *Sec.* 40, 42.) The statute protects all mortgagees recording their mortgages without notice. The statute is absolute. It gives a right to all subsequent mortgagees without notice, "which cannot be denied to them unless something is shown to render the statute inapplicable. 2 *Lead. Cases in Eq.*, 110.

4th. No reason exists why this statute should not protect all mortgagees without notice, even when the mortgage was given in satisfaction of antecedent debts. (See 2 *Lead. Cases in Eq.*, 163, and cases cited.) The element of fraud would otherwise enter into the transaction. The object of the statute is to prevent, not to foster fraud.

5th. There is no equity against a creditor, restraining him from using all legal means to obtain a preference. The period of contracting the debt, is immaterial. One creditor may justly obtain satisfaction of his debt though he thereby prevents the payment of one previously contracted. · 2 *Lead. Cases in Eq.*, 110. But suppose the previously existing debt occurred previously to the prior mortgage? The "equity" if one existed would shift.

III. The defendant below had an undoubted right to raise the question as to the amount actually due upon the mortgage of plaintiff below. He was a party in interest and had the right of redemption. (*Civil Code, Sec.* 307, *sub.* 5.) The note reads "and if not paid at maturity then to draw interest at the rate of ten per cent. per month until paid."

In construing a contract, gramatical sense may be disregarded (*Jackson* v. *Topping*, 1 *Wend.*, 388,) and the literal

import of words (*Kelly* v. *Upton*, 5 *Den.*, 336; *Decker* v. *Furniss*, 3 *id.*, 291, 309)—that the intent of the parties may be arrived at.

The note is ambiguous. It may be clear that something was due in case the note was not paid at maturity, and that the word "interest" is used in that relation. The word "interest" has frequently been decided to mean penalty. 7 *Bac. Abr.*, 239, *citing Strode* v. *Parker*, 2 *Vern.*, 316; *Holles* v. *Wyse, id.*, 289; *Nicholas* v. *Maynard*, 3 *Atk.*, 520; *Marquis* v. *Higgins*, 2 *Vern.*, 134; *Prec. in Chan.* 161; 2 *Min.* 356; 3 *id.*, 39 *Kent* v. *Brown, id.* 347; *Daniels* v. *Ward*, 4 *id.*, 168; *Orr* v. *Churchill*, 1 *Henry Blackstone*, 227.

"Interest" in the contract in the case at bar means either 1st, *interest* as such, or 2d, damages; either 1st in the nature of penalty, or 2d, liquidated. In either case the damage is to be paid in case of and after a breach of the contract.

*First.* Was the word "interest" used in the sense of interest, as such?

1st. Interest as such, is the *premium* to be paid for the loan or forbearance of money. *Dry Dock Bank* v. *Am. L. & Ins. Tr. Co.*, 3 *N. Y.*, 355; 3 *Min. R.*, 339; *Whart. L. Lex.*; *Am. Lead. Cases*, 511, (2d *Ed.*)

In American cases "interest" as such, is used in the sense of the natural growth and necessary incident of the principle, rather than as distinct and independent,—something depending upon positive agreement, which is the English idea. *Sedg. on Dam.*, 383, *citing Boyd* v. *Gilchrist*, 15 *Al.*, 849.

"Interest" is also used in a wider sense, and includes damages or penalty. (*Sedg. on Dam.*, 234, 374; *Am. Lead cases*, 511, and cases cited.)

We cannot then determine in which sense the parties to the note in suit used the term, without an inquiry into the nature of the transaction.

2nd.   Is the note . in suit an alternate contract, 1st, to pay a certain sum of money at a time fixed, *or* to pay interest thereon after that time until paid? or is it an agreement to pay a fixed sum absolutely at a time fixed, *and* in case of failure to pay a percentage in the nature of damages?   We think the latter the true construction.

Alternate contracts are optional with the *party performing*.   He is not bound to perform *any one in particular*, unless he elects.   When he has no election by the terms 'of the agreement, it is not optional.   24 *Wend.*, 246 7, 8; 2 *Abb. N. Y. Dig.*, 55, citing 6 *Barb.*, 179, 4 *N. Y.* (4 *Com.*) 249; 7 *John.*, 465; *Pothier Tr, des. Obliga.*, 246; *Smith* v. *Sanborn*, 11 *John.* 59.

In the case at bar the debtor has no right of election. The note is an *absolute* agreement to pay $250 twelve months after date.   *See cases cited and* 7 *John.* 465.

The note in suit, then, is an absolute agreement to pay a certain sum of money at a certain time without any opportunity or right of election on the part of the obligor *and* (not "or") in case the contract is broken, then the obligor becomes liable to an action for the damages (call them by what name soever) consequent thereon.

3rd.   What is that which is recoverable?

The parties by the use of mere words cannot change the nature of the consequences that must flow from the breach. It is a settled rule that "in case of an agreement to do some act, and upon *failure*, to pay a sum of money, the Court will look into the intent of the parties" as it is developed by an enlightened consideration of the nature of the contract, and that "no particular phraseology will be held to govern absolutely."   *Sedg. on Dam.*, 421, *citing* 17 *Barb.*, 260; 24 *Vt.*, 97; 12 *Barb.*, 366; 5 *Seld.*, 551; 19 *Barb.*, 106; 16 *Ill.*, 475; 11 *Texas*, 273.

Where the word "interest" is used, as such, by Americans, it is presumable that it is used to express the natural growth of the principle, and not something distinct and

independent therefrom, and only to be had by virtue of some positive agreement. *See cases cited in Sedg.*, 383. An agreement for interest as such in America, would be an agreement for a premium for the loan or forbearance of money, which is the natural outgrowth of the money loaned.

The nature of the contract before the Court determines that the word "interest" as used therein and as applied to the amount to be paid in case of a breach, could not have been used by the parties thereto *in the sense of interest as such*, because there is no agreement for the forbearance of the money,—no stipulation whatever that the loan should continue after the maturity of the note. While the agreement runs the percentage does not. The latter is not then the natural outgrowth of the principal, and is not therefore interest as such in the American sense.

There is no agreement on the part of Clemo absolutely to pay any percentage. The percentage clause is inserted to take effect after a breach of the contract—entirely as a *condition* to govern the contracting parties in case of a breach, in exactly the same sense as the condition of a money bond.

In the case of a bond, instantly as the contract is broken, the damages for the breach, whatever may have accrued, together with the sum secured thereby, becomes due to the extent of the penalty.

In the case before the Court when the contract is broken, the damages for the breach thereof, whatever may have accrued, together with the sum secured thereby, becomes instantly due to the extent of the ten per cent. per month.

There is no difference in principle between a penalty in gross and one graded as a percentage, which grows with the growth of time, for in either case all that can be actually recovered is the actual damages.

The ten per cent. per month then stipulated for in the contract, has not the *elements* of "interest as such," in it·

It was not an outgrowth or incident to the money loaned, nor a compensation for its use while loaned according to the contract.

The parties to the note therefore, did not understand by the term interest, as used therein the American idea of *interest as such*. What did they understand by the term?

*Second.* We have seen that in American as well as English contracts the word "interest" is used in a much wider sense than merely "interest as such," and that it has been determined by judicial decisions to include the idea of damages or penalty.

The conclusion then is unavoidable that the parties to this contract must have used the word "interest" in the sense either of damages or of penalty.

To determine in which of these senses, we must resort to the same rules of interpretation. In determining between these two senses, the Courts favor in every case possible, the construing of the amount to be paid, to be a penalty, and not liquidated damages. When there is a reasonable doubt as to the intent, it is to be construed as a penalty. (*Smith* v. *Wainwright*, 24 *Vt.*, 97; *Low* v. *Notle*, 16 *Ill.*, 475; *Sedg. on Dam.*, *p.* 421, *test first.*)

1. Whenever a contract is made to cloak oppression, the Courts will relieve by treating the stipulated sum to be paid on the breach thereof as a penalty. *Sedg. on Dam.*, 421; *Beach* v. *Hays*, 5 *Sand.*, 640; *Furnan* v. *Henman*, 16 *Ill.*, 400; *Holderman* v. *Jennings*, 14 *Barb.*, (*Ark.*), 329; 5 *Cow.* 150, *Note b ; 3 John. cases*, 297.

There is no distinction in principle, between those cases where the sum stipulated to be paid on the non-payment of a less sum made payable by the same instrument, is fixed in gross (*Sedg. on Dam.*, 421, *and cases above cited*,) and those cases where the penal sum depends upon the length of time the breach shall run, provided it is determinate from the terms of the contract. (*Orr* v. *Churchill*,

1 *Henry Blackstone, R.* 227; *Spencer* v. *Tilden,* 5 *Cow.* 147.

In the case before the Court, the penalty is 10 per cent. per month, a fixed and determinate amount. The fact that it is couched in the mild term of percentage, or clothed in the garb of interest, does not change its nature, nor make it one penny less oppressive. Is there oppression cloaked in the contract before the Court? We have the simple facts in the proceedings of this case below, that the note was given for only $250, that it remained on interest according to the construction of the Court below, only from March 9th, 1859, until May 1862, thirty-eight months, and that the judgment against the defendant in which this plaintiff in error had an interest, was rendered for $956 and costs of suit.

On the face of it it looks very like oppression, not only cloaked, but barefaced, unreasonable, burdensome, and imposed with sub-human severity.

Whether the particular circumstances of the case, the state of the country, the condition of the "times," would alleviate this inhuman, exorbitant, cruel, unrelenting and tyranical burden, is a question of fact for the jury, and should have been left to them.

There is no doubt that the amount of money stipulated to be paid upon the non-payment of the note, was exorbitant and unreasonable, for the *forbearance* of the sum of money mentioned in the note. The fact is *patent* on the record. It is one reason then why the percentage should be regarded as a penalty. 5 *Cow.,* 144; *Greenl. Ev., p.* 269, *Sec.* 25; *Brown* v. *Bellows,* 4 *Pick.,* 179; *Dean* v. *Cummings,* 3 *John. cases,* 21; *Sedg. on Dam.,* 421; 5 *Sandf.,* 640; 16 *Ill.,* 400; 14 *Barb., (Ark.)* 315, 329; 11 *Texas,* 273; *Reynolds* v. *Bridges,* 37, *Eng. L. & Eq.,* 122; *Bridges* v. *Hyatt,* 2 *Abb. Pr. R. (N. Y.)* 449; 2 *Abb. N. Y. Dig.,* 49; *Jackson* v. *Baker,* 2 *Edw.,* 47; 2 *Bos. & P.* 346; 6 *Bing.,* 141; 5 *Seld.,* 551; *Lampman* v. *Cochran,* 16 *N.*

*Y.* (2 *Sm.*) 275, *affirming* 19 *Barb.*, 388; *Bayley* v. *Peddue,* 16 *N. Y.*, 469.

. 2. Another reason why the sum stipulated for in the note should be regarded as a penalty, is because in its exorbitant provisions, it violates the well settled principle of law that "no damages can ever be so liquidated for mere non-payment of money, as to exceed the rate of interest established by statutes. 2 *Abb. N. Y. Dig.*, 5; 18 *John.*, 219; *Esmond* v. *Van Benscholen,* 12 *Barb.*, 366; 5 *Cow.*, 150, *note b and cases cited; Sedg. on Dam.*, 209; 1 *Am. Lead Cases* 535, *citing Arrington* v. *Gee,* 5 *Iredell's Law*, 590-5; 12 *Mass.*, 4, 6; 1 *Paige,* 221, 225.

This law may be more applicable in those States where usury laws exist. But aside from the arbitrary rule made necessary by these statutes against usury, there is a principle involved applicable to the case in Court.

The statutes in force at the time of making the contract (Laws 1855, p. 433, Sec 1,) had expressed the sense of the country, and fixed, so far as they could without interfering with the rights of parties to contract, the measure of damages on money due at 6 per cent. per annum. These statutes, it is true, have used the word "*interest*," but from the very nature of things, the interpretation of that word as applied to the per cent. to be allowed for the breach of money contracts, must be construed as well as the same word used in contracts, to mean damages. (*See cases cited above.*) The same word is used in most of the statutes of the States, and always construed in the same way. The injury resulting from the non-payment of money due does not in law fluctuate, however it may do in fact. The fact that the statutes of Kansas established 6 per cent. per annum, and not twenty times six as damages for the non-payment of money due or to become due, should have great influence in determining whether this contract as construed by the Court below is oppressive, and whether the intention of the parties was to make the ten per cent. per month

a penalty or not. Even if the contract should be deemed a legal contract; even though the statutes of 1855 use the word interest, yet the same questions arise that are involved in this case. What is the nature of the interest? Is it interest as such, a penalty, or liquidated damages? But in the judgment we have pronounced upon them, the statutes of Kansas do not authorize nor provide for a contract of this kind, if it is to be construed as by the Court below. Sec. 2d, Laws 1855, p. 433, says: "The parties may agree in writing for the payment of any rate of interest on money due or to become due upon any contract." There is no implication that the parties must agree at the making of the contract.

From the language used we cannot infer that "the parties may agree in writing" at the time of making a contract for the payment of any rate of interest as such, on money secured by the contract after it shall have become due. The statute is in the present tense infinitive,—"*to become due.*" To authorize the interpretation contended for, it must be in the future perfect, "*shall have become.*" The most that can be implied, is, that the parties may agree in writing at any time, whether at the time of the making of the contract or afterwards, for the payment of any rate of interest on money already due on that contract or on moneys "to become" due according to the terms of the contract. By no manner of reasonable construction can the words of the statute be made to *include* the idea that parties before money becomes due may agree for any rate of interest upon that money, and that rate shall be the measure of damages in case it is not paid when due. This idea is left by the statute where it found it, to be settled by the law of the land.

Besides it is the *interest* to become due that is contemplated in the statute. From the nature of the transactions which the section seems, intended to govern, the word interest used in that regard would be subject to the same

rules of construction as herein indicated, where confined within the terms of the contract, it would be interest as such; when used as compensation for a breach of the contract, damages. But we insist that by the terms of the statute there is no permission or authority given for parties to liquidate before hand the damages for a breach of money contracts. This does not imply that they have not that right—only not by virtue of *that* statute.

3d. It is eminently proper that parties should have the *right* to agree upon the rate of interest within the limits prescribed by usury laws. And even, " An agreement to pay money at a certain time after date, and if not then paid, to pay interest *from the date*," may be a good agreement, and all the interest that should accrue up to the maturity of the note would be *interest* as such. 1 *American Lead Cases*, 511, 2 *Col. Bot.* In this case the agreement to pay interest *from date*, would not necessarily be an agreement for a penalty, because *as interest* the percentage would not run after maturity. But even this has been decided to be a penalty. 1 *Amer. Lead Cases*, 512. Even a note " with interest at three per cent. per annum if paid at maturity, if not six per cent. to be paid" or one " payable without interest until the note is out, if not paid then, *lawful interest* until paid," might come under the same rule as agreements for interest as such, because both would draw interest from date. 1 *Amer. Lead Case*, 512 ; 15 *Mass.*, 117.

" Until paid " may mean " until due," so far as the agreement to pay interest as such is concerned. At all events this is an agreement to pay " lawful interest," which is always the measure of damages. An agreement to pay lawful damages certainly would be upheld. Besides in these cases, no element of oppression exists; the rate agreed upon is mild, reasonable and lawful. There is another class of cases illustrating the principle we are contending for, a specimen of which we find in 7 Bac. Abr.,

239.  The interest by the deed was to be five per cent. per annum, and if not paid by the space of two months after the time of payment, then to be raised to five and one-half per cent. for increase of interest.   It was decided in this case that the interest accruing after due, was in the nature of a penalty, and relievable in equity.   2 *Ver.*, 316, 289; 3 *Atk.* 520.  Also see Sedgwick on Damages, 420,—note "d."  These cases differ from the case in 15 Mass., 177, in this the penalty of five and one-half per cent. takes effect to run after the breach of payment, and does not take effect from the date.   There is no difference in principle in these cases and the one at bar.   Had there been a stipulation in the note in this case to pay eleven per cent. per annum from the date until maturity, inserted in addition to the present stipulations of the note; or had the stipulation for ten per cent. per month, commenced two months from the maturity instead of at its maturity, the nature of the contract would not have been changed in the least, the ten per cent. per month would still be a penalty, and no more a penalty than it now is.

4th.   There is an illustration of this rule, that *oppression* in a contract to pay a stipulated sum for the breach thereof, is a reason for deciding that sum to be a penalty, —in that class of cases holding independent of any statute that an agreement made at the time of the original contract, to allow interest upon interest as it should become due, is not to be supported.  (*Sedg. on Dam.*, 384; 1 *John Ch.*, 13, *and cases cited*; 6 *id.*, 315; 5 *Paige*, 98.)  They are discountenanced on the grounds of public policy, and because they are oppressive, however plain and unambiguous the agreement may be.   9 *Paige*, 334-345; 4 *Rand.*, 406-408; 1 *Amer. Lead Cases*, 539-40, and on the ground that parties cannot contract before the interest is due in relation to it.   Of the same character is that class of decisions overruling unconscionable contracts, which provide for the delivery, for example, of two grains of rye-corn on

Monday, four grains on the next Monday, so doubling, *quo-olibet alio die lunæ* for one year. *Sedg. on Dam.*, 212-221, *and note a*.

When oppression, then, enters into the elements of a contract so fully as in this, according to the construction put upon it by the defendants in error, we should at least pause before we adopt that construction as the true intent of the parties.

If it was the intention, we have the highest authority for discouraging such contracts on the grounds of public policy. I know of no country on earth,—I have never lived amid times, that call so loudly for an exercise of all the discretionary power of courts to shield an oppressed people from the heartless grasp of avaricious money-loaning Shylocks, whose all-absorbing clutches are fastened relentlessly upon almost every improved foot of ground in Kansas. Ten per cent. per annum is surely enough for the forbearance of money.

5th. But as we have seen and shall see, there are the best of reasons for believing that the intention of the parties was to insert the per cent. per month, as a penalty.

The whole matter has been reviewed in the courts of Minnesota, and the matter has been settled in a manner that does honor to the judicial ability and legal acumen of the bench and bar of that young commonwealth. 2 *Minn.*, 356; 3 *id.* 339; *Kent* v. *Brown, id.* 347; *Daniels* v. *Ward*, 4 *id.* 168.

6th. There is another reason why the ten per cent. per month mentioned in the note should be regarded as a penalty.

The real and actual damages for the non-fulfillment of the contract are capable of being certainly known and estimated, the law having fixed the damages, for the breach of money contracts. *Laws* '59, *p.* 487; *Laws* '55, 433; 2 *Gr. Ev., p.* 269, *Sec.* 258; *Spencer* v. *Telden*, 5 *Cow.*, 144; *Graham* v. *Beckham*, 4 *Dal.*, 150; *Brown* v. *Bellows*, 4,

*Pick.* 179 ; *Derm* v. *Cummings*, 3 *John. Cases*, 297 ; *Orr* v. *Churchill*, 1 *Henry Blackstone*, 227 ; 16 *N. Y.* (2 *Sm.*) 469 ; *Sedg. on Dam.*, 421, *note* 1, *sub. div.* 5, *and cases cited.*

7th. The contract before the Court, also seems to come within another rule. The instrument provides " that a larger sum shall be paid on the failure of the party to pay a less sum in the manner prescribed;" according to the decisions, " the larger sum is a penalty *whatever may be the language used in describing it.*" *Sedg. on Dam.*, 241, *note* 1 ; 16 *N. Y.*, 469 ; 2 *Gr. Ev.*, *p.* 269, *Sec.* 258-9, *and cases cited.*

The fact that the larger sum is put in the shape of ten per cent. per month *interest*, can not change the nature of the agreement. It has been well said, " the griping creditor will always use the particular form or phraseology of contract which will secure him his pound of flesh, unless the courts interfere in all cases and tell him that from the very nature and essence of the contract, whatever he claims and in whatever shape, or upon whatever footing, if it be in truth plainly beyond the legal amount of damages, so far it shall be no more than nominal." 5 *Cow.*, 150 *note*.

Such are some of the rules laid down in the books for " *testing* " a penalty. It is a matter " governed by *peculiar and artificial rules.*" 16 *N. Y.* (2 *Sm.*) 469, *Sedg. on Dam.* 418-419-20, *and notes.*

There is no avoiding the conclusion that the contract before the Court comes plainly within the rules established for the test. The ten per cent. per month is, and was intended for a penalty, and should be construed as such, and not as interest or liquidated damages. If there is a doubt as to the intent, it is to be construed as a penalty. *Sedg. on Dam.*, 441, *and cases.* The damages for the breach of the contract should have been measured by the Court below, according to the equitable rules established in such cases. The rule that the contract furnishes the measure of damages is subject to the other rule, that the party cannot

claim more than the actual damages sustained. When these two rules meet they produce this reasonable and equitable result, that the party injured must show the particular injury of which he complains, and he will be compensated therefor. *Sedg. on Dam.*, 210-396.

3d. Regarded as a penalty, the damages must be established before a recovery can be had, and in this case they are fixed by law at ten per cent. per annum. *Laws* '59, *p.* 487, *and cases cited.*

*Louis Carpenter*, for defendant in error:

The defendant in error, Thompson, makes the following points on the first assignment.

1st. That the plaintiff in error has no interest ʻin this action, as appears by the record.

It will be observed, on examining the final judgment in this case, that the Court made no finding in favor of defendant Young.

2d. That the record of the absolute deed executed by Clemo to Fant, on the 9th of March, A. D. 1858, and recorded March 13th, 1858, was a good and legal record, and imparted legal notice to all subsequent purchasers and incumbrancers. *Laws of* 1855, *page* 181, *Chap.* 26, *Secs.* 40, 41.

But the plaintiff in error maintains that the record of the deed of conveyance was no record, because the defeasance was not recorded; and he refers to the decisions of New York and other States in support of that position. But it will be found on an examination of these authorities, that they do not rest upon principle, but are founded *on the peculiar provisions of the statute law of those States.* The decisions of the New York Courts are collated in Willard's Equity Jurisprudence, page 254, and of the other States in 1 Hilliard on Mortgages, page 36, and on. It will be seen by an examination of the statutes of those States, that in some, defeasances are expressly required to be recorded,

and that in others, different books are kept; and that absolute deeds are required to be recorded in the deed-book, and that mortgages are required to be recorded in the mortgage-book.

We think the record sufficient, for the following reasons:

1st. There is no good reason why it is not sufficient. The record gives constructive notice of an absolute conveyance, and the greater always includes the less.

There is no fraud, injustice or harm resulting to any one. Suppose that Young when he took his mortgage, had actual notice of the deed to Fant, would his mortgage not be postponed to Fant's? That notice is sufficient, which puts a party upon inquiry. This is the settled rule. *Leading Cases in Equity*, *Vol. II.*, *part 1st*, *pp.* 133-170, 15 *N. Y. Court of Appeals*, 354.

In this last case, the Court of Appeals reviews the doctrine of notice, and sustains the rule as I have stated it, thus overruling the cases in Johnson's Chancery Reports, and destroying the authority of Kent's Commentaries, on that point.

Constructive notice rests upon the hypothesis that parties may search the records, and obtain actual notice of their contents.

There is no difference between actual and constructive notice, in its consequences. 2 *Sugden on Vendors and Purchasers*, *Chap.* 23, *Sec.* 1, *on Notice*, *1st subdivision*, *Boston edition of* 1855 : *Hill on Trustees*, *page* 510, *Marginal Paging*, *3d American edition.*

But there is another consideration, which bears upon this question with great weight. For this Court to decide that the record of an absolute deed is not notice in those cases in which defeasances have been given by the mortgagee but not recorded, would do more towards unsettling titles and opening the flood-gates of litigation than any decision which this Court could make on any other subject. Perhaps, of all the mortgages that have been made in the Ter-

ritory and State of Kansas, full one-half have been in this form, and the defeasance has not been recorded in one instance in a hundred.

Again, this question arises on the true construction of the Statutes of 1855. *See Laws '55, page* 181, *Chap.* 26, *Sec.* 40 *and* 41.

The contemporaneous interpretation put upon a statute law by lawyers and business men, is entitled to great consideration. *Sedg. on Statutory Law, page* 251.

The courts always give such a construction to doubtful statutes, as will preserve rights honestly acquired, rather than destroy them, as will conduce to the repose of titles rather than to their disturbance. *Sedg. on Statutory Law, page* 252; 3 *Howard,* 670; 18 *Howard,* 163.

Speaking of *leges non scriptæ,* Blackstone says, he thus styles them, " because their original institution and authority are not set down in writing, as acts of parliament, but they receive their binding power and force of laws by long and immemorial usage and by their universal reception throughout the Kingdom." 1 *Blackstone Com.* 62, *old paging.*

This definition of the unwritten law illustrates the just rule of statutory construction. The construction of the recording acts, for which I am contending, is founded on the general usage and practice of lawyers and business men all over Kansas, from the very organization of the Territorial Government down to the present time.

Thus we see that there are two powerful reasons for sustaining the view adopted by the Court below:

1st. That such a construction of the recording acts is one universally received in Kansas.

2d. That such a construction conduces to the repose and security of titles.

Again: It appears from the answer of defendant Young that his mortgage was taken for a pre-existing debt. There is no doubt from the language of the answer that such is

the meaning of the allegation, "that Clemo being indebted to Young, made his certain promissory note," &c., and it is a perfectly well established rule that the language of the pleading is to be taken most strongly against the pleader.

The rule appears to be settled, that a mortgagee who takes his mortgage to secure a pre-existing debt, is not a purchaser for a valuable consideration, within the meaning of the recording laws. *Willard's Equity Jurisprudeuce,* 256; 4 *Kent,* 476, (*8th Edition,*) note; 2 *Leading Cases in Equity, part* 1, *page* 101 *to* 107; 4 *Paige,* 215.

The reason of the rule it is not difficult to understand. The whole doctrine of notice and of purchase for a valuable consideration without notice, is an old head of Equity Jurisprudence. For a person to protect himself by the plea of a purchaser for a valuable consideration without notice, the purchase money must have been actually paid, in whole or in part, before notice of the equitable interest of other parties. 11 *Leading Cases in Equity, part* 1, *page* 77-112.

The principles which govern the courts in the adjudication of cases arising under the recording acts, are all derived from the Chancery doctrine of a purchase without notice for a valuable consideration, and the New York cases, above referred to, are founded upon well established and long recognized equity principles. Nor does the peculiar phraseology of the Act of '55, affect a change in the general rule. *See Section* 42 *of law of* '55, *on Conveyances.*

"No instrument in writing shall be valid, except between the parties thereto." This must be read in connection with Section 41. The meaning is, that subsequent purchasers and mortgagees, without notice of prior conveyances and incumbrances, unrecorded, shall be protected. What is a purchaser? Certainly the word would be defined as in the plea of a purchaser, &c., without notice. The word purchaser so standing in the statute, means purchaser for a

valuable consideration. The object of the recording acts is to prevent fraud and not to protect it. When the *bona fide* purchaser for a valuable consideration is protected, the end of the registry act has been attained. The peculiar phraseology of the statute is not material. 2 *Vol. Lead. Equity Cases, pt.* 1, *page* 110-163-164,

In 6 Mo., p. —— the effect of this recording act came up, and the New York decisions were quoted with approbation, and the general doctrine distinctly recognized, that a purchaser, to be protected under the registry laws of the State of Missouri, must be a purchaser for a valuable consideration; and the construction of the statute by the Missouri courts is decisive here. *Pennock* vs. *Dialogue*, 1 *Peter*, 18; *Bemis* vs. *Becker*, 1 *Kansas Supreme Court R.*, 226.

And the authorities certainly are to the effect, that a mortgagee whose mortgage is for an antecedent debt, is not such a purchaser.

Hence, we conclude that the defendant Young has not established any equity in himself, and his rights must be postponed to those of the plaintiff Thompson.

As to the second assignment of error—

The great object of all interpretation is, to reach the intention of the contracting parties, where the terms of the contract are *ambiguous ;* but there is no need of interpretation where there is no ambiguity. 2 *Parsons on Contracts*, 12.

Now, what is the true intent of the parties to this contract, for interest as expressed in the note sued upon in this case?

1st. That the defendant, Clemo, should pay a certain sum of money, unconditionally, at a certain time; 2d. That if he did not pay the money at the time stipulated, then that he should pay interest at the rate of ten per cent. per month, after maturity, until paid.

This was a legal contract. *Laws of* 1855, *page* 433.

The language employed had been often used, and the custom of the country was, to consider the reservation of

Young v. Thompson.

interest on money, after it should become due, as a thing possible to be done, if the parties chose so to do. Contracts of this kind have always had a certain definite meaning among business men in Kansas, and the language has received a uniform construction. Nor is there any doubt of the meaning of the parties.

Interest may be reserved on money after it shall be due. *Laws* 1855, 433; 1 *Amer. Leading Cases*, 504-505.

The mistake of the plaintiff in error is, in confounding interest reserved by contract with the compensation which is allowed by the courts in certain cases, as damages. *See* 1 *Amer. Leading Cases*, 503-505.

From not attending to this distinction between interest reserved by contract, and the compensation allowed by the courts in certain cases, under the name of interest, so called because the legal rate of interest is assumed as the measure of damages, the plaintiff in error has adopted the fallacy, that the ten per cent. per month, after due, is in the nature of a penalty. We insist that the ten per cent. per month after due is reserved by the express terms of the contract, *as interest*, and not as damages or a penalty; that parties had the *power*, under the Interest Law of 1855, to contract for interest on money, after it should become due; that such contracts were legal, and could be enforced just as well as contracts for interest on money to become due; and that, in this case, there is a contract for interest on money after it should become due. The Supreme Court of the United States, in Brewster *vs.* Wakefield, 22 Howard, 128, plainly intimate that the parties might, by contract, have reserved interest after due, under the law of Minnesota.

Examine Section 1, Law of '55, and take it in connection with the second section: "Creditors shall be allowed to receive interest at the rate of six per cent, per annum, *where no other rate of interest is agreed upon*, for all moneys *after* they become due," &c.—*Section* 1.

Will any man in his senses pretend to say that it was in the contemplation of Fant and Clemo, at the time of the execution of that note, that after maturity it was to draw only legal interest? Can it be doubted that parties might, under that law, contract for any rate of interest on money due at the date of the contract? If A had borrowed one hundred dollars of B, and had given his note, due at the date, and reserved interest at the rate of five per cent. a month until paid, would not such a contract come within the plain purview of the statute? *Examination of cases*, 3 *Iowa*, 351.

Not in point; for interest is expressly reserved as a penalty in so many words, and of course was held to be a penalty. *See Sedg. on Dam.*, 438-439-441.

The cases in 3 Minnesota, are partially in point.

We hold that these cases are not decided upon principle; but that they are arbitrary, unjust, and of no authority.

But the interest law of Minnesota is different from that of Kansas of 1855. Compare—

"Any rate of interest agreed upon by the parties in contract, specifying the same in writing, shall be legal and valid." 3 *Minn.*, 344.

"The parties may agree, in writing, for the payment of any rate of interest, on money due or to become due, upon any contract." *Laws of* '55, 433, *Sec.* 2.

The Kansas law plainly permits a party to reserve interest on money after it shall become due, BY CONTRACT; while the Minnesota statute might be construed as limiting the *contract* to the time when the note was payable by its terms.

But, let us analyze this case in 3 Minnesota. We observe, first, that the Supreme Court of Minnesota has decided this question both ways. *See* 3 *Minn.*, 343-4.

The points made in that case are the following, set down in the order in which they appear in the decision of the court;

1st. That the contract ended with the promise to pay a certain sum of money, at a certain time.

2d. That there was no consideration for the promise to pay interest, after the maturity of the note.

3d. That the fact that the parties have agreed to pay the money at a day certain, excludes the idea that there should be any other understanding.

4th. That the last clause of the note, reserving interest after due, is in substance and effect an attempt to liquidate the damages for a breach of the contract; and that this cannot be done.

The positions of the Court may be thus stated: That the promise to pay interest after due, is without consideration and void; that the contract for interest terminates at the maturity of the note, on the principle that a contract consists of a promise and a consideration; and that there is no contract where there is no consideration; and in the absence of contract, legal interest only is recoverable, and that by way of damages; 2d, that the last clause of the note is an attempt to liquidate the damages, which cannot be done: hence, only actual damages are recoverable, which are the legal rate of interest.

The first position of the Court depends upon the point, whether the promise to pay interest upon maturity is without consideration. We insist that the original consideration of the note is sufficient to sustain the promise to pay the principal and interest before and after due, and the use of the money, or the voluntary continued forbearance, either is a sufficient consideration.

The contract for interest is one of a numerous class of *alternate contracts*, in which parties agree to do one of two or more things, in which the original consideration is always held sufficient to sustain the alternate agreement. 24 *Wendall*, 244; *Sedg. on Dam.*

A man hires a horse at a livery stable, and promises to return it in two days, or to pay a dollar a day for every

day he has the horse over that time.   He also deposits a hundred dollars with the livery man, under the agreement that if he does not return the horse within a week, he shall keep the horse and the livery man shall keep the money. Here is a contract with several alternatives, but the original letting of the horse and the use of the animal support the first alternative, that the hirer shall return the horse in two days, or pay a dollar a day for the use of it.   Is there any want of consideration here?   Does this contract end in the failure of the hirer to return the horse at the end of the second day?   The position of the Court "that the parties have agreed to pay the money at a day certain, excludes the idea that there should be any other understanding," is simply false, and exhibits the ignorance of the Court of the state of affairs in Kansas.   When it amounts almost to a legal presumption that a note will not be paid when it is due, it is natural and proper that parties should provide against the contingency of the notes not being paid when due, and our law gave them the power so to do.   The question is, simply, was it possible, in the nature of things, for parties to contract for interest after the principal should fall due?   When a stipulation to that effect forms part of the original transaction, it is absurd to say that it is without consideration.

We therefore perceive, on an analytical examination of the leading principle upon which the Minnesota case rests, that the reasoning therein is based upon a specious fallacy, and that the conclusion is untrue.

As to the second position of the Court, that parties cannot in any case liquidate damages, it is as fallacious as the first.

This is not a technical bond : *Sedg .on Dam.*, 418-419.

Nor an agreement to pay a stipulated sum as *penalty*; *id.*

Nor to pay a sum as liquidated damages  in terms; *id.*

It is an *alternative contract* to do one of two things, making it optional with the maker of the note to pay the same

at maturity, or to pay interest afterwards at a stipulated rate during the voluntary forbearance of the payee. Interest is the compensation for the *use* of money, and not necessarily for the forbearance of it. The Minnesota case proceeds upon the hypothesis that parties *cannot* contract for interest on money due; but our law expressly permitted it. One man has a pasture—another a horse. It is agreed between them that the *one* shall pasture the horse for a dollar a week, but nothing is said about how long he shall so pasture the horse. This contract and that for interest after maturity are exactly analogous. The owner of the pasture in the one case, or the payee of the note in the other, has a right at any time to terminate the contract, but both contracts are legal, and we perceive no difference in their obligation.

This, we maintain, is an alternative contract, in which the parties have liquidated, by the terms of the contract, the compensation for the use of the money after due. The difference between this contract for interest and a penal bond, is this, that the sum mentioned in the bond becomes due on the failure to perform the condition, but the interest reserved by the terms of the note under consideration, is not made payable because the note was not paid at maturity, but for the use of the money afterwards. The distinction is very obvious, when understood. In the case of a penal bond, it is the intention of the parties, that only actual damages shall be recovered, for everybody knows the legal effect of such an instrument. In our case, nothing becomes due on the failure of the promisor to pay the note, according to the condition, but in the failure to perform the condition of a penal bond, a very large amount becomes instantly due. Again, in our case, no damages are recoverable, on failure, to pay the note at maturity, but a compensation is stipulated for the use of the money while it should be enjoyed by the promisor.

If it will confer any pleasure, I have no objection to calling this interest so reserved, on money due, liquidated

damages. I maintain that parties may liquidate their damages in a proper case, and that the position of the Minnesota Court to the contrary, is not law. *Sedg. on Dam.*, 431-436-437-445 ; 26 *Wendal,* 244 ; *Lange* vs. *Work*, 2 *Ohio State,* 519 ; *Easton* vs. *Penn. and Ohio Canal,* 13 *Ohio,* 79.

We hold that the parties to the note in controversy had an unquestionable right to liquidate the damages, and that the decision of the Court below could be sustained on that ground. But we conceive the true understanding of the case to be that the ten per cent. per month reserved after maturing, is reserved *as interest* by the terms of the written agreement according to the real intention of the parties. And the Supreme Court of the United States, in Brewster *vs.* Wakefield, 22 Howard, 122, in which the interest law of Minnesota was under consideration, plainly intimate that the parties would be bound by a contract, stipulating to pay five per cent. a month after due, if the contract "is written in plain and unambiguous terms."

There is one rule which runs through all the cases, and that is that the intention of the parties is to govern, and that where the intent is ascertained, the courts will give effect to the contract according to the intent.

In this case there can be no doubt as to the intention of the contracting parties.

*By the Court,* KINGMAN, J.

This is a petition in error brought to reverse a judgment of the District Court of Douglas County.

The suit was brought by the defendant in error, Charles L. Thompson, to obtain a money judgment and a foreclosure of a mortgage given to secure the payment of a note given by T. H. Clemo to Hamilton G. Fant or order, and by Fant assigned to Thompson. This note and mortgage were dated March 9, 1858. Young was made a defendant as claiming some interest in the land.

Young answers setting up a subsequent mortgage by Clemo and wife of the premises to him, and a foreclosure sale and deed to himself under such mortgage; and further, that the mortgage to himself was made in good faith for a valuable consideration, and without any notice of any pre-existing or prior lien or incumbrance on the mortgaged premises, but that the mortgage by Clemo to Fant was in the form of an absolute deed of conveyance, and that a defeasance was at the same time executed by Fant to Clemo to the effect that on the payment by Clemo to Fant of the money due on the note, that Fant should re-convey the premises to Clemo. That the absolute deed of conveyance from Clemo to Fant was duly recorded, but that the defeasance was not recorded.

To the answer of the defendant Young, Thompson filed a general demurrer, setting up as a ground of objection that the answer did not state facts sufficient to constitute a defense to the plaintiff's petition. This demurrer was sustained, but at a subsequent day of the term and before the trial the order sustaining the demurrer was so modified as to show that the Court only decided that the answer is insufficient to postpone the plaintiffs right in the mortgaged premises, and make it subject to the claim of the defendant Young. But the answer is allowed to stand as a statement of the interest of Young in the premises, as subsequent mortgagee.

The Court on the final hearing, gave judgment in favor of plaintiffs for the full amount claimed in his petition, and ordered the mortgaged premises to be sold and the proceeds arising from the sale to be applied in satisfaction of Thompson's claim.

It is claimed that the Court below erred in sustaining the demurrer and in the assessment of the amount due from Clemo to Thompson. The ruling of the Court on the demurrer in the shape which was finally given to it, raises the question whether the recording of the deed without the

defeasance was such a registration under the law as to give to defendant in error a prior lien on the premises. If it was, then the ruling of the Court though somewhat irregular, still was the application of the true principles of the law of the case, and we have no doubt on this point.

The deed from Clemo to Fant was absolute on its face, purported to convey the whole estate of Clemo to Fant. It was prior to that of Young and was duly recorded before Young obtained any interest in the land. It was constructive notice to all that Clemo had parted with his title to the land. Upon what principle then can Young complain that the estate is subject to redemption? The deed seemed absolute, but when the whole transaction is developed it makes it a mortgage, and gives Young some further rights than he had before.

It gives him a possible chance to secure his debt, while without the defeasance there would be none. The recording of the defeasance was the duty of Clemo; he had it in his possession; it could not be recorded or controlled by Fant or his assignee. It protected only the rights of Clemo, not those of Fant. If when Young bought he believed it was an absolute deed he had no title to acquire from Clemo. If he knew it was a mortgage then he must yield to the acknowledged priority of Thompson's lien. It is impossible to see how he could have been injured by the non-recording of the defeasance.

This question has been settled in Iowa in the case of Clemons vs. Elder, 12 Iowa, 274, holding the recording of the defeasance not necessary in a case exactly similar to this. The authorities cited turn upon the peculiar phraseology of the recording statutes different from those in force here when these instruments were executed.

This Court in the case of Dudley vs. Reynolds, has already passed upon the law involved in the second assignment of error. We see no cause for reversing the reasoning in that case, and do not doubt its application to the

Commissioners of Shawnee County v. Carter.

present one.  In considering that case we had the benefit of the argument of the learned counsel for the plaintiff in error in this cause.  We think the Court below ruled correctly in the assessment of the amount due.

The decision of the Court below is affirmed.

BAILEY J., concurring, COBB C. J., having decided the cause in the Court below, declined to sit in the case.